**MAYHEW v. ATKINSON et al.**

Civ. No. 1181–50.

United States District Court
District of Columbia.

Nov. 9, 1950.

Edgar A. Wren, of Washington, D. C., for plaintiff.

Hilary W. Costello, of Washington, D. C., for defendant, Ernest W. Stevens.

Ralph A. Cusick, of Washington, D. C., for defendant Nellie G. Stevens.

HOLTZOFF, District Judge.

The question involved in this case is whether the interests of the remaindermen become accelerated and payable immediately, if the widow of the deceased renounces a life estate created for her benefit under the will, and elects to take the share to which she would have been entitled in case of intestacy.

This is an action for the construction of a will. The matter is brought before the Court on motions for summary judgment made by the respective parties.

George B. Stevens, who died on March 13, 1949, left a will which, after providing for several small cash legacies, left the residue of the estate in trust to pay the decedent's wife, Nellie G. Stevens, for

life or until she remarried, the sum of $200 a month, which might be increased in the discretion of the executors by an amount not to exceed $250. The will then continued:

"Upon the happening of either event then said trust shall be distributed absolutely and in fee simple as follows:

"First: Lot 802 in Square 5982, known as premises 2759 Nichols Avenue, Southeast, Washington, D. C., together with the stock, equipment and good will known as George B. Stevens, Stevens' Service Store, to William V. Mayhew and Frank Mayhew as joint tenants in fee simple and absolutely.

"Second: One-third of the residue to my son Ernest W. Stevens in fee simple and absolutely.

"Third: One-third of the residue to the Second Church of Christ Scientist, Washington, D. C., in fee simple and absolutely.

"Fourth: One-third of the residue to those of my step-children enumerated in Item Second of this my last will, as may be living at the time their interests shall vest, in fee simple and absolutely."

The widow renounced her interest under the will and elected to take the share to which she would have been entitled in the event that her husband had died intestate. One of the executors has brought this suit for the construction of the will and for instructions as to the disposition of the corpus of the estate. It will be observed that one part of the corpus, consisting of the business constituting Stevens' Service Store, together with the real property on which it is conducted, is devised and bequeathed to William V. Mayhew and Frank Mayhew as joint tenants. The balance of the corpus is to be divided into three parts to be disposed of as follows: one-third to the decedent's son, Ernest W. Stevens; one-third to the Second Church of Christ Scientist; and the balance to certain of the decedent's step-children.

William V. Mayhew claims that the remainders should be accelerated as a result of the widow's renunciation, and that the devise of the real property and bequest of the business made to him and to Frank Mayhew, should become effective immediately. On the other hand, Ernest W. Stevens contends that the remainders should not be accelerated and the corpus should not be distributed until the death or remarriage of the widow. He further urges that in the meantime the income of the estate should be accumulated and added to the corpus. These conflicting contentions present the question to be determined by the Court.

It is a general rule that if an estate which was intended to last for a restricted time, fails for any reason, the interests that are to follow become accelerated and take effect immediately as if no such prior interest had existed. Thus in Fuller v. Fuller, Cro. Eliz. 423, the Court held that if a devise for life is void, "it is as if it never had been made" and "he in remainder shall have it presently". Ordinarily, the will is then treated as though the devise for life had never been made, and the succeeding interests become payable immediately.

This general principle applies if a widow, to whom a life estate has been devised, renounces the provision made for her and elects to take the share to which she would have been entitled in case of intestacy. In that event the life estate fails, and ordinarily the remainders become accelerated and the remaindermen may enter into possession immediately.

Thus, in an early case in this jurisdiction, Ladd v. Ladd, Fed.Cas.No.7,972, 2 Cranch C.C. 505, 506, it was held "that, upon the widow's renouncing the provision made for her by the will, the estate, devised to her for life, with remainder to the complainant, in fee, vested immediately in him."

Similarly, in Capron v. Capron, 6 Mackey 340, 347, it was held that by the widow's renunciation of her life estate and election to take as by intestacy, the remainder devised to the children became payable immediately.

This general rule was recognized in a recent case in the District of Columbia, McDonnell v. McDonnell, 72 App.D.C.

317, 114 F.2d 478, although the Court also pointed out that the rule is subject to exceptions. The precise point here under consideration was not involved, because the trust estate was to continue not only until the remarriage or death of the life tenant, but also until the youngest surviving child should have reached the age of twenty-five. Consequently, the widow's renunciation of her life interest could not operate as a termination of the trust.

In Maryland, this principle has been frequently approved and applied. Thus, in Hinkley v. House of Refuge, 40 Md. 461, 468–469, Judge Alvey, who later became the first Chief Justice of the Court of Appeals for the District of Columbia, made the following statement: "Now, it is certainly true, that at law, if a party devise to A for life, with remainder to B, and A renounce the devise, or the first devise be void, the remainder is good, and will take effect immediately." In that case, however, owing to its peculiar circumstances acceleration was not permitted because it appeared that it was never contemplated by the testator that the legacies should be paid before the death of the widow.

In Randall v. Randall, 85 Md. 430, 439, 37 A. 209, 210, the Court stated: "The rule followed by both the English and American courts is, that a widow's renunciation and election to take as against the will is equivalent to her death, unless it contravenes some manifest intention of the testator as expressed by the will." In that case it was held that a widow's renunciation and election terminated the trust and accelerated the devise and bequest to the testator's children.

The rule of acceleration as a result of the widow's renunciation of her life estate, has also been approved and applied in the following cases, In re Roger's Trust Estate, 97 Md. 674, 55 A. 679; Davis v. Hilliard, 129 Md. 348, 354–356, 99 A. 420; Craig v. Craig, 140 Md. 322, 329, 117 A. 756; Mercantile Trust Co. v. Schloss, 165 Md. 18, 27, 166 A. 599.

This principle has been thoroughly discussed and applied in a series of cases in Pennsylvania. Thus, in Coover's Appeal, 74 Pa. 143, 147, the Court stated: "The widow's renunciation under the will had the same legal effect as her natural death." In that case the Court allowed acceleration of remainders because the widow had renounced her life estate.

In Ferguson's Estate, 138 Pa. 208, 219, 20 A. 945, 946, the Court stated that the widow's election to take under the intestacy law, was equivalent to her death so far as concerned the termination of her life estate. The Court added: "This is the general rule; and, if there are any exceptions, they must depend on the expression or unavoidable implication of a contrary intent of the testator. No such intent is apparent in the present will. The widow was the chief object of the testator's bounty. * * * When, therefore, she renounced the provisions of the will, and claimed her legal rights under the intestate law, there was no longer any reason why the definite legacies to appellant and others should be postponed, and they became immediately due."

The same result was reached in Disston's Estate, 257 Pa. 537, 101 A. 804, and in Loew's Estate, 291 Pa. 22, 28–29, 139 A. 582, 584. In the last cited case, Chief Justice Moschzisker wrote as follows: "Therefore, when the widow elected to take against the will, the usual rule applied, and the interests of the children became immediately payable to or vested in them, just as though the widow had died, except, of course, that each of their shares would be reduced by the proportion going to her under the intestate law. * * *" This doctrine has also been approved and applied in other States, Sherman v. Flack, 283 Ill. 457, 119 N.E. 293; Trustees Church Home v. Morris, 99 Ky. 317, 36 S.W. 2; Hesseltine v. Partridge, 236 Mass. 77, 78, 127 N.E. 429.

There are, indeed, exceptions to the general rule. Thus, if there are several estates measured by the life of the widow, her renunciation does not interfere with the other interests and, therefore, does not result in an acceleration of the remainders, Reighard's Estate, 253 Pa. 43,

97 A. 1044. Again, if the trust is to terminate on more than one contingency, of which the widow's death is only one, the widow's renunciation does not accelerate the remainders since it is necessary to await the occurrence of the other contingencies, McDonnell v. McDonnell, 72 App. D. C. 317, 114 F.2d 478. Moreover, if it clearly appears from the face of the will that it was the intention of the testator that in no event should the remainders take effect prior to the widow's death, or that the testator was motivated, in whole or in part, by considerations other than financial protection of the widow, acceleration will not take place. There are also some cases that have refused to invoke the general rule in a situation in which an inequality would result between the remaining legatees, Sellick v. Sellick, 207 Mich. 194, 173 N.W. 609; Jones v. Knappen, 63 Vt. 391, 22 A. 630.

■ The instant case does not fall within any of the exceptions. There is nothing on the face of the will from which an intention can be inferred to take the case out of the general rule that the widow's renunciation and election result in an acceleration of the remainders. The life estate was created solely for her benefit, and if she declines to accept it, there is no reason why the distribution to the remaindermen should be postponed until her remarriage or death. There will be no inequalities as between them. The share of each beneficiary will be reduced by the same proportion as a result of the widow's choice to take as under an intestacy. Thus, she will receive a proportionate undivided interest in the real property and in the business devised and bequeathed to William V. Mayhew and Frank Mayhew, and the same fractional share of the legacies left to Ernest W. Stevens, to the Second Church of Christ Scientist, and to the step-children referred to in the fourth paragraph of the residuary clause.

It is urged, however, that since there has been a considerable surplus income over and above that which was payable to the widow under the terms of the will, it must have been the intention of the testator that this excess should be accumulated for the duration of the life estate, and that the accumulations should be distributed as part of the residue, when the life estate terminated. It is argued that acceleration would defeat this purpose of the testator. It is far from clear, however, that the testator had any such purpose in mind, or that in creating the life estate he was actuated by any other motive than to protect the widow by a fixed income for her life. Moreover, to require accumulation of the entire income to take place during the life of the widow, even though she has renounced her life estate, would result in grave injustice to the legatees of the decedent's business. Such a construction would require either that the executors carry on the business until the remarriage or death of the widow,—which would be an exceedingly undesirable consummation —or that the two legatees of the business should take it over at this time, but accumulate the profits for a period of years for distribution to the other legatees, thereby, in effect, operating the business for the benefit of the latter. This result would be manifestly unfair. There is no indication that the testator intended to create any such windfall for the other legatees, or to place such a burden on the legatees of the business. On the other hand, an acceleration of the remainders, subject to the right of the widow to take her proportionate share as by intestacy out of each remainder interest, will result in equality of treatment as between the various distributees.

Accordingly, the court concludes that as a result of the widow's renunciation of her interest under the will, the remainders became accelerated and the distribution of the corpus should take place at this time. The share to which the widow is entitled under the laws of intestacy should be allocated to her by taking the same proportion of each of the remainder interests, thereby giving her an undivided share in the real property and in the business, and the same fraction of the other legacies.

Counsel will submit proposed findings of fact, conclusions of law, and judgment, in accordance with the foregoing ruling.